IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTINE R. ETCITTY,

        Plaintiff,

v.                                            No. CV 18-1148 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Christine R. Etcitty's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 18), filed May 6, 2019; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 20), filed July 5, 2019; and Ms. Etcitty's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (the "Reply"), (Doc. 21), filed July 16, 2019.

Ms. Etcitty filed applications for disability insurance benefits and supplemental security income on June 22, 2012. (Administrative Record "AR" 77, 183, 185). In both of her applications, Ms. Etcitty alleged disability beginning June 1, 2012. (AR 183, 185). Ms. Etcitty claimed she was limited in her ability to work due to: carpal tunnel; asthma; diabetes; complete hearing loss in her right ear; vertigo; obesity; tinnitus; and sleep apnea. (AR 225).

Ms. Etcitty's applications were denied initially on October 10, 2012 and upon reconsideration on July 15, 2013. (AR 116, 120, 124). Ms. Etcitty requested a hearing before an Administrative Law Judge ("ALJ"), (AR 133), which was held on November 6,

1

2014 before ALJ John Morris. (AR 32). Ms. Etcitty and Thomas Greiner, an impartial vocational expert ("VE"), testified at the hearing and Ms. Etcitty was represented by attorney Ione Gutierrez. (AR 32).

On March 19, 2015 ALJ Morris issued his decision, finding Ms. Etcitty not disabled at any time between her initial filing date, June 22, 2012, through the date of his decision. (AR 26). Ms. Etcitty requested review by the Appeals Council, (AR 1), which was denied, (AR 1-4), making ALJ Morris' opinion the Commissioner's final decision for purposes of judicial review.

On November 17, 2016, Ms. Etcitty filed a complaint in the United States District Court for the District of New Mexico requesting review of ALJ Morris' decision. (AR 847). The Commissioner did not oppose Ms. Etcitty's motion and the Court remanded the case for further administrative proceedings. (AR 851-53). On remand, the Appeals Council explained that ALJ Morris failed to provide an explanation with specific references to evidence in the record in support of Ms. Etcitty's assigned residual functional capacity ("RFC"). (AR 856-57). The Appeals Council therefore instructed the ALJ to further evaluate Ms. Etcitty's RFC and provide evidentiary support for the conclusions reached. *Id.*

On August 13, 2018, Ms. Etcitty appeared before ALJ Lillian Richter with attorney Laura Johnson and non-partial VE Sandra Vibbert. (AR 773). ALJ Richter issued her decision on October 3, 2018, finding Ms. Etcitty not disabled prior to March 22, 2017. (AR 761). Ms. Etcitty then requested review by the Appeals Council, which was denied, making ALJ Richter's opinion the Commissioner's final decision for purposes of this appeal.

Ms. Etcitty, who is now represented by attorney Michael Armstrong, argues in her

Motion that: (1) ALJ Richter's RFC findings conflict with the job of "document scanner" under the Dictionary of Occupational Titles ("DOT"); (2) the DOT number for the job of production worker "does not correspond to that job title;" and (3) ALJ Richter "failed to conduct the review required in *Trimiar* for cases with [a] borderline number of jobs in the national economy." (Doc. 18 at 2). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Richter erred in relying on VE Vibbert's testimony without first eliciting an explanation for the discrepancies with the DOT, the Court finds that Ms. Etcitty's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 18), should be **GRANTED** and this case **REMANDED** for proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but

should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order

4

to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.  Background

Ms. Etcitty claimed she was limited in her ability to work due to: carpal tunnel; asthma; diabetes; complete hearing loss in her right ear; vertigo; obesity; tinnitus; and sleep apnea. (AR 225). At step one, ALJ Richter determined that Ms. Etcitty had not engaged in substantial gainful activity since June 1, 2012, the alleged disability onset date. (AR 746). At step two, ALJ Richter found that Ms. Etcitty has the following severe impairments: obesity; asthma; migraines; obstructive sleep apnea; hypersomnia;

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

diabetes mellitus, type II; bilateral carpal tunnel syndrome; arthritis of the hands; chronic low-back pain; sciatica; medical epicondylitis of the left elbow; bilateral hearing loss; an anxiety related disorder; adjustment disorder; panic disorder with agoraphobia; depressive disorder; and post-traumatic stress disorder ("PTSD"). *Id.*

At step three, ALJ Richter determined that none of Ms. Etcitty's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 746-49). At step four, ALJ Richter found that Ms. Etcitty has the RFC to perform a limited range of work at a sedentary exertional level except: she can frequently handle and finger bilaterally; she can occasionally stoop, kneel, crouch, and climb ramps and stairs; she can never crawl or balance; she may need to alternate from sitting to standing every forty-five minutes for five minutes while remaining at the work station; she should avoid exposure to unprotected heights, hazardous machinery, extreme heat and cold, vibration, dust, odors, fumes, and pulmonary irritants; she is limited to simple routine work, occasional interaction with supervisors and coworkers, and no interaction with the public; and she is limited to a workplace with few changes in the routine work setting. (AR 749-50).

In formulating Ms. Etcitty's RFC, ALJ Richter stated that she considered Ms. Etcitty's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 750). ALJ Richter also stated that she considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. *Id.* ALJ Richter concluded that some of Ms. Etcitty's impairments could be expected to cause her alleged symptoms,

6

but she found the intensity, persistence, and limiting effects that Ms. Etcitty described were not entirely consistent with the evidence in the record. (AR 755).

In evaluating the medical evidence in the record, ALJ Richter stated that she gave "little weight" to the opinions of non-examining state agency psychological consultants Scott R. Walker, M.D., Julian Lev, Ph.D., and Renate Wewerka, Ph.D. (AR 755-56). Similarly, ALJ Richter gave "little weight" to the opinions of consultative evaluators Steven K. Baum, Ph.D., and John R. Vigil, M.D., and the reports authored by Carl Russell, MA, LMHC, and David P. Green, M.D. (756-58). In contrast, ALJ Richter afforded "significant weight" to the opinions of consultative psychologists Louis Wynne, Ph.D., and Thomas P. Dhanens, Ph.D., and the opinion of consultative physician Jeffrey Jobe, M.D. (AR 756, 758). Finally, ALJ Richter gave "some weight" to the opinions of non-examining state agency medical consultants Mary L. Rees, M.D., and Libbie Russon, M.D. (AR 757-58).

ALJ Richter also discussed Ms. Etcitty's reported activities of daily living, her testimony at the hearing, and treatment notes authored by several medical providers dating back to 2012. (AR 750-58). Further, ALJ Richter considered the third-party reports submitted by Ms. Etcitty's daughter, son, and home-health provider. (AR 758-59). ALJ Richter carefully dictated years of Ms. Etcitty's statements to treatment providers, providing a detailed chronology of her reported impairments and their associated symptoms. (AR 750-59).

At step four, ALJ Richter found that Ms. Etcitty is unable to perform her past relevant work as a customer service representative, office helper, home health attendant, or residence supervisor. (AR 759). ALJ Richter then moved to step five, noting that prior to March 22, 2017, Ms. Etcitty was classified as a "younger individual"

7

in accordance with the Regulations. *Id.* Ms. Etcitty subsequently changed age categories on March 22, 2017 and is now correctly classified as an "individual closely approaching advanced age." *Id.* At this step, ALJ Richter also determined that Ms. Etcitty has at least a high school education and is able to communicate in English. *Id.*

ALJ Richter noted that because Ms. Etcitty's age category changed during the course of these proceedings, she would evaluate her abilities both as an individual closely approaching advanced age and as a younger individual. (AR 760). Further, ALJ Richter explained that if Ms. Etcitty had the RFC to perform the full range of sedentary work in either age category, a finding of not disabled would be directed by Medical-Vocational Rule 202.21. *Id.* However, ALJ Richter found that Ms. Etcitty's limitations impeded her ability to perform the full range of sedentary work. *Id.* Therefore, ALJ Richter relied on the testimony of the VE to determine applicable jobs Ms. Etcitty could perform in the national economy. *Id.*

ALJ Richter explained that under her current classification as an individual closely approaching advanced age, there are no jobs that exist in significant numbers in the national economy that Ms. Etcitty can perform. (AR 761). As a result, ALJ Richter concluded that, beginning on March 22, 2017, Ms. Etcitty became "disabled" pursuant to Medical Vocational Rule 201.14. *Id.* However, ALJ Richter explained that before March 22, 2017, a significant number of jobs existed in the national economy that Ms. Etcitty could have performed. (AR 760). Specifically, ALJ Richter noted that VE Vibbert testified at the hearing that an individual with Ms. Etcitty's same age, education, work experience, and RFC could have performed the jobs of document scanner and production worker. *Id.* After finding VE Vibbert's testimony consistent with the DOT, ALJ Richter adopted the testimony of VE Vibbert and concluded that, because Ms. Etcitty

was capable of performing work existing in significant numbers in the national economy, she was not disabled prior to March 22, 2017 pursuant to 20 C.F.R. §§ 404.1569 and 416.969. (AR 760-61).

**IV.    Analysis**

Ms. Etcitty challenges ALJ Richter's finding that prior to March 22, 2017, she was capable of performing work existing in significant numbers in the national economy. Specifically, Ms. Etcitty alleges VE Vibbert's testimony that she could have performed the job of "document scanner" is inconsistent with ALJ Richter's RFC finding that she is limited to "simple routine work." (Doc. 18 at 20-21). Next, Ms. Etcitty argues the job title "production worker" is not enumerated at the listing cited by VE Vibbert. *Id.* at 23-24. Finally, Ms. Etcitty argues that because there are only 30,000 production worker jobs available in the national economy, ALJ Richter should have considered the factors set forth in *Trimiar v. Sullivan*. *Id.* at 24-25.

In response, the Commissioner does not address the inconsistency between the skills needed to perform the job of document scanner and ALJ Richter's finding that Ms. Etcitty is limited to "simple routine work." (Doc. 20 at 4) (explaining instead that "the remaining job on which the ALJ relied remains sufficient to support her step five finding."). Next, the Commissioner contends that while the VE "may have described the job with reference to the broader name of production worker, the DOT entry she cited corresponds with the ALJ's RFC finding and hypothetical question in all relevant respects." *Id.* at 5. Finally, the Commissioner argues that even absent the job of document scanner, the production worker job exists in significant numbers in the national economy and ALJ Richter's decision can therefore survive judicial scrutiny. *Id.* at 6.

9

A. Conflicts between VE's testimony and the DOT

At step five, the Commissioner bears the burden of showing the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261. In determining whether a claimant's job skills are transferrable to another occupation, the ALJ may rely on the testimony of a VE and the VE's reference to the DOT. *See* 20 C.F.R. § 404.1566(d). However, if the VE's testimony conflicts with the DOT, the ALJ has a duty to elicit an explanation for the discrepancy before relying on the VE's testimony. *Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir. 2005) ("[T]he ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point."). This duty includes questioning the VE about "any deviations from a publication recognized as authoritative by the agency's own regulations." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). If there is an unresolved conflict between the VE's testimony and the DOT, the VE's testimony cannot constitute substantial evidence to support a determination of non-disability. *Id.*

The VE generally determines whether a claimant can successfully perform the occupation listed in the DOT by comparing the claimant's limitations and the corresponding physical and mental requirements of performing the occupation. 20 C.F.R. § 404.1566(d)-(e). In making this determination, the VE evaluates the skills needed for a particular occupation by assessing the job's "general educational development" ("GED") score. DOT, App'x C, *Components of the Definition Trailer*, § III. An occupation's GED score is divided into three sub-parts: reasoning development, mathematical development, and language development. *Id.* Each occupation is

assigned a ranking between one and six in each of the three GED divisions. *Id.* An assignment of six is the highest reasoning, mathematical, and language development score an occupation can be awarded. *Id.* An assignment of one is the lowest possible score. *Id.* The VE then compares a claimant's abilities with an occupation's GED and development scores and renders a conclusion on whether the claimant is capable of performing other work. *See* 20 C.F.R. § 404.1566(d).

        *1. Document Scanner*

The job of "document scanner," formally entitled, "Document preparer, Microfilming," consists of, *inter alia*, "prepar[ing] documents, such as brochures, pamphlets and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices…." DOT § 249.587-018. The occupation of document scanner is assigned a reasoning development score of three, requiring an individual to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, App'x C, *Components of the Definition Trailer*, § III.

Ms. Etcitty argues her RFC is incompatible with the job of document scanner. (Doc. 18 at 20-21). Specifically, Ms. Etcitty argues ALJ Richter's finding that she is limited to "simple routine work" conflicts with a document scanner's need to "deal with problems involving several concrete variables in or from standardized situations." *Id.* at 22-23. Put simply, Ms. Etcitty argues her limitations inhibit her from performing a job with a reasoning development score of three. *Id.*

In response, the Commissioner does not address this inconsistency. Rather, the Commissioner contends that even without considering the job of document scanner,

11

ALJ Richter concluded that Ms. Etcitty could perform the job of production worker. (Doc. 20 at 4). The Commissioner explains there are a significant number of production worker jobs available in the national economy, and ALJ Richter's conclusion can therefore be supported by that occupation alone. *Id.*

The Court agrees that ALJ Richter's finding that Ms. Etcitty is limited to simple routine work is inconsistent with an occupation requiring level-three reasoning. *See Hackett*, 395 F.3d at 1175. ALJ Richter had a duty to address this apparent conflict in her opinion or elicit testimony from VE Vibbert about how Ms. Etcitty's limitation can be reconciled with the occupation's reasoning score. *See id.* As such, ALJ Richter erred in relying on the testimony of VE Vibbert when her testimony conflicted with the DOT and neither VE Vibbert nor ALJ Richter explained the inconsistency. *See id.* (explaining that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT] and elicit a reasonable explanation for any discrepancy on this point.").

   2. *Production Worker*

In addition to the job of document scanner, ALJ Richter adopted VE Vibbert's testimony that Ms. Etcitty could preform the job of "production worker, D.O.T. No. 726.685-066." (AR 760). ALJ Richter further explained that VE Vibbert's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* Based on her conclusion that Ms. Etcitty could have performed the jobs of document scanner and production worker, ALJ Richter concluded that Ms. Etcitty was not disabled prior to March 22, 2019.

Despite ALJ Richter's contention that VE Vibbert's testimony is consistent with

the DOT job description, the occupation of production worker is not found at DOT § 726.685-066. Instead, § 726.685-066 lists the job of "Bonder, Semiconductor (electron. comp.)." This job requires an individual to, *inter alia*, "tend[] automatic bonding machine[s] that bond[] gold or aluminum wire to integrated circuit dies to connect circuity to package leads…" DOT § 726.685-066. The occupation of "Bonder, semiconductor" is listed under "Benchwork occupations," "occupations in assembly and repair of electrical equipment," and "occupations in assembly and repair of electronic components and accessories, N.E.C." DOT § 726.685-066.

Ms. Etcitty argues ALJ Richter had a duty to elicit a reasonable explanation from VE Vibbert regarding this inconsistency. (Doc. 18 at 23-24). Therefore, Ms. Etcitty contends, ALJ Richter's failure to investigate this discrepancy and her "boilerplate statement" declaring that "the VE's testimony was consistent with the information contained in the [DOT]," constitutes reversible error. *Id.* at 20. In response, the Commissioner does not dispute that a conflict exists. (Doc. 20 at 5). Rather, the Commissioner argues the job of "bonder, semiconductor," "corresponds with the ALJ's RFC finding and hypothetical question in all relevant respects." *Id.* Essentially, the Commissioner contends, Ms. Etcitty's argument that the wrong title was recited by ALJ Vibbert is "little more than an insistence on empty formalism." *Id.*

Neither VE Vibbert nor ALJ Richter explained the discrepancy between the title of the occupation listed in the DOT and the occupation of production worker that VE Vibbert purported Ms. Etcitty could have performed. This discrepancy is troubling for a number of reasons. First, the only job entitled "production worker" in the DOT is that of a "thermometer production worker." *See* DOT § 710.685-014. This job, however, must be performed at the "light" exertion level. *Id.* Therefore, if VE Vibbert was suggesting that

13

Ms. Etcitty could have performed the work of a thermometer production worker, neither she nor ALJ Richter discussed how the requirement of light exertion could be reconciled with Ms. Etcitty's limit to only sedentary work. This discrepancy alone, similar to the conflict identified in ALJ Richter's adoption of VE Vibbert's testimony regarding the job of document scanner, constitutes reversible error. *See Hackett*, 395 F.3d at 1175 ("[T]he ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT] and elicit a reasonable explanation for any discrepancy on this point.").

Second, the Court is unwilling to overlook this discrepancy because ALJ Richter's determination of non-disability now rests solely on her conclusion that Ms. Etcitty could have performed the job of production worker. The Court will not uphold ALJ Richter's decision when the only work Ms. Etcitty could have allegedly performed cannot be identified in the DOT. Finally, the Commissioner's current argument to rectify the conflict between VE Vibbert's testimony and the DOT is nothing more than a *post hoc* effort to explain ALJ Richter's reasoning based on little more than speculation. The Court cannot accept the Commissioner's suggested explanation for the conflict. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

In sum, VE Vibbert's testimony conflicted with the DOT listing. When a conflict of this nature exists, ALJ Richter is required to ascertain the reasoning behind the discrepancy. Here, there is no evidence that VE Vibbert addressed the inconsistency nor is there evidence that ALJ Richter sought an explanation for it. Absent an explanation, ALJ Richter erred in relying on the testimony of VE Vibbert regarding her statement that Ms. Etcitty could have performed the job of production worker.

## V. Conclusion

For the foregoing reasons, the Court finds ALJ Richter erred in adopting VE Vibbert's testimony without first resolving the discrepancies between her testimony and the DOT. The Court will not address Ms. Etcitty's remaining claim because it may become moot upon remand.

**IT IS THEREFORE ORDERED** that Ms. Etcitty's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 18), is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE